In re Robert Bruce HALL Mary
Jo Hall fdba Mr. Color TV
& Appliance, Debtors.

In re Jeffrey L. RIFFLE Diane
A. Riffle, Debtors.

In re Johnny B. MAY Lorretta
L. May, Debtors.

In re Keith Lee CAMERON Mary
Louise Cameron, Debtors.

In re Stephen J. KANALAS dba Federal
Income Tax Service, Debtor.

In re Beverly Y. ESCOBEDO, Debtor.

In re Robert H. CASH dba
Craft Ally, Debtor.

Bankruptcy Nos. 2–91–05694, 2–92–00386,
93–57033, 94–55717, 97–56153, 95–
54016 and 96–50550.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 18, 1997.

Donald M. Robiner, U.S. Trustee, Ohio/Michigan Region 9, Lawrence J. Hackett, Linda M. Battisti, Office of the U.S. Trustee, Columbus, OH.

Thomas McK. Hazlett, Kinder, Harper, Hazlett & Hinzey, St. Clairsville, OH, Chapter 7 Trustee.

Daniel L. Frizzi, Jr., Bellaire, OH, for Debtors Robert Bruce Hall and Mary Jo Hall.

William B. Logan, Jr., Luper, Sheriff & Neidenthal, Columbus, OH, Chapter 7 Trustee.

Richard D. Palmer, Columbus, OH, for Debtors Jeffrey L. Riffle and Diane A. Riffle.

Arnold S. White, White & Fish, L.P.A., Inc., Columbus, OH, Chapter 7 Trustee.

Robert M. Hoskinson, Columbus, OH, for Debtors Johnny B. May and Lorretta L. May.

John S. Pucin, Weltman, Weinberg & Reis, Columbus, OH, for Debtors Keith Lee Cameron and Mary Louise Cameron.

Frederick L. Ransier, III, Ransier & Ransier, Columbus, OH, Chapter 7 Trustee.

Lee C. Mittman, Lee C. Mittman & Associates Co., L.P.A., Columbus, OH, for Debtor Stephen J. Kanalas and for Debtor Beverly Y. Escobedo.

Thomas C. Scott, Thompson Hine & Flory L.L.P., Columbus, OH, Chapter 7 Trustee.

Sara J. Daneman, Gahanna, OH, Chapter 7 Trustee.

Robert H. Cash, Columbus, OH, Pro Se.

*ORDER ON OBJECTIONS OF UNITED STATES TRUSTEE TO APPLICATIONS FOR COMPENSATION FILED BY ATTORNEYS FOR TRUSTEES*

BARBARA J. SELLERS, Bankruptcy Judge.

These matters are before the Court on objections by the United States Trustee ("UST") to fee applications filed by the attorneys for each of the bankruptcy estates captioned above. In each case the trustee's law firm has been appointed to represent the trustee in the performance of estate duties. Each of the cases is an asset case and each has projected meaningful repayment to creditors. The attorneys for these trustees have defended their applications.

The Court has jurisdiction in these matters under 28 U.S.C. 1334(a) and the general order of reference previously entered in this district. These are core proceedings which this bankruptcy judge may hear and determine.

█ The UST's objections assert that attorneys for the trustees have billed the estates for work that is more properly compensable only through the trustee's compensation calculated under § 326 of the Bankruptcy Code. According to the UST, the activities described in the fee applications do not require the assistance of an attorney either because the activities are non-legal in nature or because the activities are functions described in 11 U.S.C. § 704 which must be performed only by the trustees. Those functions include particularly:

(1) collecting and reducing to money the property of the estate, and closing such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) accounting for all property received;

. . .

(3) investigating the financial affairs of the debtor; [and]

(4) if a purpose would be served, examining proofs of claims and objecting to the allowance of any claim that is improper.

11 U.S.C. § 704.

The Court understands that the United States Trustee system has a role in monitoring fee applications filed with the Bankruptcy Court and that such a role may not be popular. The exercise of that responsibility, however, must not be driven by political considerations and must take into account the practical realities of the legal profession and of attorney/client relationships. The United States Trustee system, as an oversight agency for certain administrative aspects of the bankruptcy process, also has an obligation to preserve estate assets for creditors and to encourage and develop the panel of private trustees it has selected. The method and process of these ever more numerous objections have demonstrated the vulnerability of that system to political considerations.[1] Such concerns greatly undercut support for the panel trustees and for the distributions proposed for general or priority unsecured creditors.

A cursory examination of the seven cases involved in this latest round of objections shows that these are relatively small bankruptcy estates. None has gross assets in excess of $7,500.00. Those assets came from

---

1. The Court was informed that this district is under pressure because the United States Trustee's office was not objecting to enough fee applications.

tax refunds, insurance proceeds, preference recoveries, accounts receivable, inventory sales, security deposits, and proceeds of a personal injury suit. The fees requested by the attorneys for the trustees are also relatively modest and range from $500.00 to $1,696.00. With the exception of the *May* case, the amounts objected to are so insignificant (between $122.00 and $500.00) that the expenses of responding to the objections, preparing for a hearing and attending a hearing far exceed the amounts in controversy or any possible benefits to the estates. The cases all propose a significant dividend to creditors.[2]

Of even greater concern is the content of the objections and the conduct of these and other recent hearings on these objections. Essentially the UST is saying that, absent actual litigation, a trustee may not use the services of his appointed attorney for advice or action relating to any of the functions described in § 704 of the Bankruptcy Code. For example, it is argued that because examining proofs of claim and objecting to their allowance is described in § 704(5), such activity must be performed by the trustee without legal counsel. Only if an objection to a claim is opposed by the claimant, can legal advice be sought. A similar position is taken with the other duties described in § 704.

■ The Court finds this position not only unduly rigid, but also unrealistic. Certain aspects of the examination of proofs of claim, such as analysis for timeliness or duplication, are administrative in nature. Many other aspects of that function, however, require legal skill relating to Uniform Commercial Code requirements or to real estate, contract, tort or other areas of law. Likewise, investigating the financial affairs of a debtor can be as administrative as obtaining bank account numbers or as technical as analyzing loan documents for compliance with various legal requirements. The position that legal

advice cannot be requested for any function described in § 704 until a contested matter or adversary action has been initiated is an argument this Court believes to be incorrect and unjustified.

■ The UST also argues that absolute separation of administrative and legal tasks must be maintained throughout an inquiry. Even if a trustee has properly consulted an attorney about a possible fraudulent transfer, for example, if any part of the attorney's efforts in investigating that fraudulent transfer could be performed by a lay person, that time must be deleted from the attorney's fee application. Apart from the extreme difficulty of making such separations factually,[3] that approach ignores the realities of legal practice and attorney/client relationships. An attorney does not turn over to his client bits and pieces of an ongoing legal project simply because some non-legal analysis may be necessary for a certain step. That would not be efficient or practical. Certainly, if there is to be a protracted effort for which legal expertise would not be needed, it would be economical and advisable to involve the client's own efforts. Just because a legal project requires a letter or a telephone call which could be written or made by the client, however, does not force the attorney to cease all efforts and contact the client. Such contact and explanation to the client of what is required could cost more than the attorney's performance of the task. Some thought has to be given to expediency and practicality in the process.

The six cases on this Court's hearing docket for February 4, 1997, and the one case in Steubenville on February 21, 1997 involve six different trustees. Four appeared in the courtroom.[4] These trustees and others who have appeared over the last several months are disturbed by what they perceive as unjustified objections by the UST to the fee applications of their attorneys. Their con-

---

2. The proposed dividends are: 67.9% to priority unsecured claimants, 23.25%, 37.39%; 52.94%, 62.17%, and 94.75% to general unsecured claimants and 100% to general unsecured claimants with a $941 surplus back to the debtor.

3. The transcript of the hearing in the *Escobedo* case illustrates such difficulty.

4. One trustee did not appear because his attorney withdrew his request for all contested items and another trustee requested that the matter be submitted only on the papers.

cerns include fear of reprisals affecting their abilities to draw cases if they do not agree with the UST's objections, sensitivity to state bar disciplinary ramifications should they engage in the unauthorized practice of law by performing as a fiduciary tasks they believe are properly legal functions, and general difficulties in making somewhat arbitrary distinctions. They also are concerned that such persistent objections to small amounts will cause them to decide not to administer small asset cases at all. That decision would harm creditors who have not objected to the administrative costs, especially those creditors who appear often and routinely in consumer cases. The trustees cannot justify the expense of defending these objections. They further do not understand why these matters cannot be resolved through meaningful compromise, rather than exclusively by complete accession to all of the UST's demands.

After considerable thought about these cases and this process, the Court has reached certain conclusions. First, objections by the UST to fees for services for attorneys for chapter 7 panel trustees will no longer automatically be set for hearing. Absent unusual circumstances, such matters will be decided on the papers submitted, and the attorneys should submit orders with the amount of fees left blank in each case where an objection has been filed. Any response to the UST's objection should be filed no later than the time the order is submitted.

Second, where the objections to fees for services performed are based upon assertions that the tasks actually are not legal in nature, a presumption will operate in favor of the trustee's attorney's decision that the service is properly compensable. These panel trustees are conscientious fiduciaries whose attorneys generally charge these estates fairly for legal services performed. This Court will not second-guess or use hindsight to overrule the concerns of trustees or their attorneys about the unauthorized practice of law or the most effective manner to handle these cases. The trustees and their attorneys are the ones whose livelihoods and professional reputations are at risk. Should an objection raise questions of conduct which is egregious in nature, a different process will

be employed. To date no such issues have arisen. In this Court's opinion, the bankruptcy system will be better served by not diminishing the return to creditors through pointless hearings involving hair-splitting attempts to second-guess able professionals about small charges for fairly debatable services for necessary activities.

Based upon the foregoing, the Court will sign and complete the orders submitted by the attorney for the trustee in each of these cases.

**IT IS SO ORDERED.**